PHILLIP A. TALBERT
United States Attorney
JUSTIN L. LEE
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

**FILED**

OCT -4 2022

CLERK, U S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>              v.<br><br>ANDREW JACE LARRABURE-TUMA,<br><br>                    Defendant. | CASE NO. 2:21-CR-00213-DAD<br><br>PLEA AGREEMENT<br><br>DATE: October 3, 2022<br>TIME: 9:00 a.m.<br>COURT: Hon. Dale A. Drozd |

## I.   INTRODUCTION

### A.   Scope of Agreement

The Indictment in this case charges the defendant with unlawful dealing and manufacturing firearms, in violation of 18 U.S.C. § 922(a)(1)(A). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.   Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all

facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Indictment.  The Court is under no obligation to accept any recommendations made by the government or defense counsel. The Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that no one—not the prosecutor, not defense counsel, not the Court—can make a binding prediction or promise regarding the actual sentence he will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea

The defendant will plead guilty to the sole count of the Indictment, unlawful dealing and manufacturing firearm, in violation of 18 U.S.C. § 922(a)(1)(A).  The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are true and accurate.  The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings.  The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.   Sentencing Recommendation

The defendant and his counsel may recommend whatever sentence they deem appropriate.

### C.   Fine

The parties will jointly recommend that the Court waive imposition of a fine

1  because the defendant does not have the apparent ability to pay a fine.

2  **D.    Special Assessment**

3  The defendant agrees to pay a special assessment of $100 at the time of sentencing

4  by delivering a check or money order payable to the United States District Court to the

5  United States Probation Office immediately before the sentencing hearing.  If the

6  defendant is unable to pay the special assessment at the time of sentencing, he agrees to

7  earn the money to pay the assessment, if necessary by participating in the Inmate

8  Financial Responsibility Program.

9  **E.    Defendant's Violation of Plea Agreement or Withdrawal of Plea**

10  If the defendant, violates this plea agreement in any way, withdraws his plea, or

11  tries to withdraw his plea, this plea agreement is voidable at the option of the government.

12  The government will no longer be bound by its representations to the defendant

13  concerning the limits on criminal prosecution and sentencing as set forth herein.  One way

14  a defendant violates the plea agreement is to commit any crime or provide any statement

15  or testimony which proves to be knowingly false, misleading, or materially incomplete.

16  Any post-plea conduct by a defendant constituting obstruction of justice will also be a

17  violation of the agreement.  The determination whether the defendant has violated the

18  plea agreement shall be decided under a probable cause standard.

19  If the defendant violates the plea agreement, withdraws his plea, or tries to

20  withdraw his plea, the government shall have the right: (1) to prosecute the defendant on

21  any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be

22  dismissed pursuant to this plea agreement; and (3) to file any new charges that would

23  otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to

24  prosecution for any federal criminal violation of which the government has knowledge,

25  including perjury, false statements, and obstruction of justice.  The decision to pursue any

26  or all of these options is solely in the discretion of the United States Attorney's Office.

27  By signing this plea agreement, the defendant agrees to waive any objections,

28  motions, and defenses that the defendant might have to the government's decision to

exercise the options stated in the previous paragraph.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

## III.   THE GOVERNMENT'S OBLIGATIONS

### A.   Recommendations

#### 1.   Incarceration Range

The government will recommend that the defendant be sentenced to the low-end of the applicable guideline range for his offense, as determined by the Court.  The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

///

///

2.   <u>Supervised Release</u>

The government will recommend that the defendant be sentenced to a term of supervised release of 36 months.

3.   <u>Other Aspects of Sentencing</u>

The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

4.   <u>Acceptance of Responsibility</u>

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**B.   Agreement to Not Pursue Additional Charges**

As part of this plea agreement, the government agrees to not pursue further criminal charges against the defendant related to the 2021 drug trafficking and firearm trafficking investigation conducted by the Western El Dorado Narcotics Enforcement Team and the Bureau of Alcohol, Tobacco, Firearms and Explosives.

**C.   Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

///

## IV.   ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

As to the sole count of the Indictment, unlawful dealing and manufacturing firearms, in violation of 18 U.S.C. § 922(a)(1)(A) [9th Cir. Model Crim. Jury Instr. 14.3]:

1.   First, the defendant was willfully engaged in the business of dealing and manufacturing firearms between July 21, 2021, and September 28, 2021; and

2.   Second, the defendant did not then have a license as a firearms dealer or manufacturer.

The defendant fully understands the nature and elements of the crime charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum Penalty

The maximum sentence that the Court can impose is five years of incarceration, a fine of $250,000, a three-year period of supervised release, and a special assessment of $100.

### B.   Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment.

///

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory

guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal any aspect of the guilty plea, the conviction, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant

specifically waives his right to challenge the constitutionality of the statute of conviction, including any appellate claims under *Blackledge v. Perry*, 417 U.S. 21 (1974) and *Class v. United States*, 138 S. Ct. 798, 803 (2018).

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, the defendant gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, and sentence imposed in this case. A "collateral attack" in this circumstance means filing a motion in this Court, or any other court challenging any aspect of his guilty plea, conviction, or sentence. Therefore, the defendant cannot later decide that he is unhappy with his plea, conviction, or sentence and seek to amend, alter, withdraw, or overturn it.

## VIII.   ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///
///
///
///
///
///
///

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9/8/22

MEGHAN McLOUGHLIN
Counsel for Defendant

### B.   Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9/8/22

ANDREW JACE LARRABURE-TUMA,
Defendant

### C.   Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: 10/4/2022

PHILLIP A. TALBERT
United States Attorney

By: 

JUSTIN L. LEE      for
Assistant United States Attorney

1

**EXHIBIT A**

2

**Factual Basis for Plea**

3   If this matter proceeded to trial, the United States would establish the following

4   facts beyond a reasonable doubt:

5   In June 2021, a detective assigned to the Western El Dorado Narcotics Enforcement

6   Team identified the defendant Andrew Jace Larrabure-TUMA as Snapchat user

7   "Tunnna." Using the "Tunnna" account, TUMA offered cocaine, Xanax, mushrooms, and

8   firearms for sale. The detective communicated with TUMA and arranged to purchase a

9   firearm.

10   On July 21, 2021, a special agent from the Bureau of Alcohol, Tobacco, Firearms

11   and Explosives ("ATF") acting in an undercover capacity ("UC") met with TUMA at a

12   restaurant in Sacramento. TUMA sold the UC a privately made firearm ("PMF") in

13   exchange for cash. TUMA has never applied for, or held, a license to manufacture or deal

14   firearms.

15   On July 28, 2021, TUMA met with a confidential informant working for ATF ("ATF

16   CI") at a public parking lot in Pollock Pines. TUMA sole the ATF CI a disassembled AR-

17   15-style PMF and a full-auto switch, a device used to convert a semi-automatic guns to a

18   fully-automatic gun that fires multiple rounds of ammunition with a single trigger pull.

19   On August 4, 2021 TUMA with the same ATF CI at a public parking lot in Pollock

20   Pines. TUMA sold the CI a fully-automatic AR-15-style PMF and 3.5 grams of cocaine in

21   exchange for cash. During this transaction, TUMA described to the ATF CI how TUMA

22   had gone about converting the AR-15-style gun into a fully-automatic machinegun.

23   On August 12, 2021, TUMA advised the ATF CI that TUMA had a gun connection

24   in Antioch, California who sold rifles, pistols, and machineguns. TUMA told the ATF CI

25   that TUMA was planning to get a short-barrel 9mm rifle from the source and have the

26   source deliver the gun to a location in El Dorado Hills. Later that day, the ATF CI met

27   TUMA at a public parking lot in El Dorado Hills. Subsequently, TUMA's source of supply

28   arrived at the parking lot. TUMA took cash from the ATF CI and met with the source of

1 supply.  TUMA returned and gave the short-barrel 9mm rifle to the ATF CI.

2    On August 24, 2021, TUMA told the ATF CI that his source had a factory-made
3 Glock 35 handgun that had been converted to a machinegun.  On the ATF CI's behalf,
4 TUMA made arrangements with his source to have the gun delivered to a public parking
5 lot in El Dorado Hills.  Again, TUMA took cash from the ATF CI and met with his source
6 separately from the ATF CI.  TUMA returned from meeting with his source and gave the
7 ATF CI a fully-automatic Glock 35 pistol.

8    On August 28, 2021, law enforcement officers executed a state search warrant at
9 TUMA's residence in Sacramento.  At the time of the search, TUMA was the sole occupant
10 of the residence.  Inside the residence, law enforcement officers found what appeared to be
11 a firearm manufacturing operation, including partially complete firearms, firearm kits
12 from Polymer80 (a company based in Sparks, Nevada that sells firearm manufacturing
13 kits), firearm parts, tools for manufacturing and finishing firearms, firearms accessories,
14 three completed firearms, and ammunition.

15

16 I, Andrew Jace Larrabure-Tuma, have read the Factual Basis for Plea and agree to the
17 facts and stipulations contained therein.

18

19 Dated:  _9/8/22_____

20    ANDREW JACE LARRABURE-TUMA,
Defendant

21

22

23

24

25

26

27

28